IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNYSLVANIA

| | | |
|---|---|---|
| GUSTUS TAYLOR, GS-3890, | ) | |
|     Petitioner, | ) | |
| | ) | |
|     v. | ) | 2:10-cv-957 |
| | ) | |
| COMMONWEALTH OF | ) | |
| PENNSYLVANIA, et al., | ) | |
|     Respondents. | ) | |

REPORT AND RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the petition of Gustus Taylor for a writ of habeas corpus be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

II. Report:

Gustus Taylor, an inmate at the State Correctional Institution at Forest has presented a petition for a writ of habeas corpus.

Taylor is presently serving a life sentence imposed following his conviction by a jury of first degree murder at No. CP-02-CR-13932-2004 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on July 5, 2006.[1]

An appeal was taken to the Pennsylvania Superior Court in which the questions presented were:

> I. Did the trial court err when it failed to grant appellant's motion for judgment of acquittal pursuant to Pa.R.Crim.P. 606 where the Commonwealth failed to present sufficient evidence to convict appellant of murder in the first degree?

---

[1] See: Petition at ¶¶ 1-6 and answer of the Commonwealth.

> II. Did the trial court err when it failed to grant appellant's motion challenging the weight of the evidence pursuant to Pa.R.Crim.P. 607 where appellant's conviction was so contrary to the evidence presented so as to shock one's sense of justice?
>
> III. Did the trial court err when it denied appellant's motion for a new trial pursuant to Pa.R.Crim.P. 720c where appellant averred that Stanley Smith was now willing to testify as a defense witness after having previously invoked a testimonial privilege without granting appellant an evidentiary hearing on the after discovered evidence claim?
>
> IV. Did the trial court err by permitting the Commonwealth to introduce evidence of appellant's 2001 conviction for prohibited offensive weapon where said evidence had no probative value which would outweigh its prejudicial value where the Commonwealth introduced evidence that appellant had been convicted of possessing a shotgun to rebut appellant's testimony that he didn't carry a handgun?[2]

On February 25, 2008, the judgment of sentence was affirmed,[3] and leave to appeal to the Pennsylvania Supreme Court was not sought.

On September 16, 2008, petitioner filed a motion for post-conviction relief. Counsel was appointed to represent him, and was subsequently granted leave to withdraw following the submission of a "no-merit" letter to the court,[4] and the petitioner informed the court of his intention to proceed with his pro-se petition. The latter was dismissed on March 27, 2009 and a pro-se appeal was taken to the Superior Court in which the petitioner argued that it was error for the trial court to permit appointed counsel to withdraw based on his no-merit letter and to deny post-conviction relief.[5]

Taylor filed a pro-se brief in the Superior Court.[6] On February 1, 2010, the Superior Court quashed the appeal citing the fact that "because the substantial defects in Appellant's brief prevent this Court from conducting meaningful appellate review, we quash Appellant's appeal."[7]

---

[2] See: Exhibit 11 to the answer of the Commonwealth at p.5.

[3] See: Exhibit 13 to the answer of the Commonwealth.

[4] See: Exhibit 15 to the answer of the Commonwealth.

[5] See: Exhibit 21 to the answer of the Commonwealth.

[6] See: Exhibit 22 to the answer of the Commonwealth.

[7] See: Exhibit 30 to the answer of the Commonwealth at p.3.

Taylor then filed a pro-se application for allowance of appeal to the Pennsylvania Supreme Court in which he raised the following issues:

> 1. Did the Bench and Bar commit collusion by knowingly and intentionally with malice, deny the Appellant his right to a fair trial?
>
> 2. Did the appointed counsel abandon the Appellant on appeal by the arbitrary deprivation of not filing the notice of appeal?
>
> 3. Did the racial make-up of the all white jury in the City of Pittsburgh deny the appellant his right to a jury of his peers?
>
> 4. Did the actions of the Commonwealth in refusing to allow the testimony of my witness and the refusal to produce the requested documents prevent the Appellant from producing a factual defense?
>
> 5. Should the pending case be remanded in order to allow the clear error of law and violation of the procedures of Pa. Law be granted to allow claim for habeas relief?
>
> 6. Is the pro se Appellant entitled to the requested granting of this Appeal?[8]

On July 7, 2010, the petition for allowance of appeal was denied.[9]

In the instant petition, executed on August 18, 2010, Taylor contends he is entitled to relief on the following grounds which are a reiteration and supplementation of his habeas corpus petition filed in the Pennsylvania Supreme Court at 96 WAL 2010:

> 1. Pursuant to 28 U.S.C.A.§1651(a), Article I, §9 of the Pennsylvania Constitution and Pennsylvania Rules of Criminal Procedure #904(F)(2) and the 6th Amendment of the United States Constitution… for the violation(s) of his 14th Amendment Rights, Criminal collusion and ongoing miscarriage of Justice.
>
> 2. The pro se Petitioner has fully developed the material record and requested the production of documents which to date have never been produced in clear violation of Federal Rules of Civil Procedure, Rule 34(a)(b) and Rule 37(a)(b)(3) and (4)(b)(2). These actions violated the Supreme Court's 6 to 3 Ruling that a new trial must be given because the right to meaningful confrontation, was knowingly and intentionally violated by the prosecutors, which is a clear Sixth Amendment violation… a new trial must be awarded as a matter of law.

---

[8] See: Exhibit 32 to the answer of the Commonwealth at p.3.

[9] See: Exhibit 35 to the answer of the Commonwealth.

3. See: The entire record and all exhibits to support and the requested documents which was denied by the Supreme Court of Pennsylvania on the 7th day of July, 2010 and hereby incorporated by reference…

4. The denial on the 7th of July, 2010, amounts to an act of usurpation in violation of the well-settled case law of this Circuit and the Supreme Court of the United States.

5. The Petitioner invokes equitable tolling in this action and he invokes also the principle of equity because it is the correct law to redress the violations of Pa.Rules of Criminal Procedure which is controlled by the Federal rules of civil Procedure, and would be unfair if he is not allowed to fully develop his claims in Court.[10]

The factual background to Taylor's prosecution is set forth in the February 25, 2008 memorandum of the Superior Court summarizing the trial court's recitation:

> Commonwealth witness, Lenora Maiolo ["Maiolo"], testified that she was a friend of [Taylor] and Stanley Smith ["Smith"] and would often do drugs with the two (2) of them. On the night of the murder, which was at the end of April 2004, Ms. Maiolo and the two (2) men were in a motel room doing drugs when she heard Mr. Smith say to [Taylor]. "go get that snitching bitch." Mr. Smith told Ms. Maiolo to go with [Taylor] and he would meet her later.
>
> Ms. Maiolo testified that she was a passenger in a car driven by [Taylor]. At some point in the evening, [Taylor] and Ms. Maiolo ran into the victim, Kristine Switzer ["Switzer"], in front of a store in the Beltzhoover section of the City of Pittsburgh. [Taylor] exited the vehicle, approached the victim and the two (2) began to argue. [Taylor] took the victim by the arm, opened the car door and shoved her into the vehicle. The three (3) continued to ride around in the vehicle and stopped at various bars. During this time, Ms. Maiolo learned that the victim owned [Taylor] twenty dollars ($20), which she assumed was for drug sales.
>
> The vehicle arrived at what turned out to be an abandoned house and [Taylor] pulled the victim from the vehicle. [Taylor] and the victim began to argue and [Taylor] pushed her, knocking her to the ground. [Taylor] then took the victim into the house and told Ms. Maiolo to shut the car off and follow them. [Taylor] and [the] victim went upstairs, while the witness remained inside the front door.
>
> A short time later, the witness heard a scream and ran up the steps into a bedroom. Once inside the bedroom, she observed the victim lying face down on a mattress, while [Taylor] was standing over her with a gun pointed at her. [Taylor] fired a shot at the

---

[10] See: Attachment to the form habeas petition adopted by this Court which the petitioner apparently elected not to complete and in lieu thereof attached his "Petition for Habeas Corpus…" as Exhibit "A" thereto.

4

victim followed by four-five (4-5) more. The witness turned to leave and to go down the stairs when [Taylor] yelled for her to stop and return to the bedroom. When she returned, [Taylor] attempted to put the gun in her hand and demanded that she also shoot the victim so she wouldn't "snitch" on him. The witness finally took the gun and fired one (1) shot in the victim's direction.

The two (2) left the house and continued to ride around in the car during which time [Taylor] threatened to harm the witness and her family, if she went to the police.

The witness didn't come forward to report her observations until September of 2004, when she was arrested on unrelated charges and felt safe enough to tell of her observations.

The victim's body was not recovered until May 3, 2004. An autopsy was performed on May 4, 2004. The cause of death of Kristine Switzer was multiple gunshot wounds to the trunk. At the time of the recovery of the body, the police located multiple discharged .40 caliber bullets and multiple .40 caliber cartridge cases. The Commonwealth established that the .40 caliber cases were fired from the same weapon.

At the scene, underneath and around the victim's body, the police collected maggots and pupae, which are stages in the life cycle of a fly. The police turned the items over to William Todaro, a medical entomologist, with the Allegheny County Health Department. Mr. Todaro testified that, after his examination of the items and his review of various temperature measurements and national weather reports, he was able to place the approximate date of the death of Kristin Switzer at April 26, 2004.

[T]he Commonwealth [also] called Richard Carroll ["Carroll"], who was an inmate in the Allegheny County Jail with [Taylor] following [Taylor's] arrest. Mr. Carroll testified that [Taylor] admitted that he killed Kristine Switzer because she was a snitch and that [Maiolo] was with him.[11]

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that

before a federal court will review any allegations raised by a state prisoner, those allegations

---

[11] See: Exhibit 13 to the answer of the Commonwealth at pp.1-3.

must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.
> We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States...
>
> A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the

Supreme Court or is inconsistent with Supreme Court decision in a case involving "materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

In the instant case, while it is difficult to determine what it is that the petitioner is alleging here, it also appears that in both his direct appeal and in his post-conviction proceedings he did not raise these issues. Thus, he had failed to exhaust his state court remedies. However, at this juncture he can no longer return to the state courts for purposes of exhaustion.

In <u>Coleman v. Thompson</u>, 501 U.S. 722,750 (1991), the Court held:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

Because no such showing is made here, the petitioner has procedurally defaulted the available state court remedies on these issues and no further consideration of these issues is warranted here, and his petition is subject to dismissal.

Accordingly, it is recommended that the petition of Gustus Taylor for a writ of habeas corpus be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

Any party desiring to file objections to the above report and recommendation must do so within fourteen (14) days of this date. Failure to do so will be construed as a waiver of the right to file objections.

                                            Respectfully submitted,

                                            s/ Robert C. Mitchell

Date: October 27, 2010                       United States Magistrate Judge

.